# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEAROY WILLAMS and JONATHAN MORNING, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) Case No. 1:23-cv-01573 |
| Plaintiffs, | ) |
| v. | ) |
| TOPHAT LOGISTICAL SOLUTIONS, LLC and ATLAS LOGISTICS, INC., | ) |
| Defendants. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR CONDITIONAL CERTIFICATION**

0

I.    **INTRODUCTION**

Plaintiffs Learoy Williams and Jonathan Morning hereby submit their Reply in support of their Motion for Conditional Certification. As the Supreme Court has held, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013)).[1] At the conditional certification stage, the plaintiff is required to make only a "modest factual showing" that the class members were "victims of a common policy or plan that violated that law." Dawkins v. NR1 Transport, Inc., 2021 WL 4125086, at *10 (N.D. Ill. Sept. 8, 2021) (internal citations omitted). In determining whether conditional certification is appropriate, "the court must accept as true the plaintiff's allegations and does not reach the merits of the plaintiff's FLSA claims." Clemens v. Stericycle, Inc., 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016). Defendants ignore the two-step process utilized in the Seventh Circuit and by this court, and instead seek to hold Plaintiffs to a higher burden. In doing so, Defendants complicate this straightforward inquiry by making arguments better suited to the decertification analysis, and by presenting competing evidence, which the Court need not give weight to.

Plaintiffs in this case have shown that they and other collective action members worked as delivery drivers for TopHat; were classified as independent contractors; signed virtually identical agreements with TopHat; had deductions taken out of their pay for damage claims; and, as a result of those deductions, did not receive any wages during the final weeks of their work for TopHat.

---

[1] In their Opposition, Defendants accuse Plaintiffs of "stirring up litigation". Similar attacks are routinely rejected by courts. See, e.g., Roberts v. Sidwell Air Freight Inc., 2022 WL 16949565, at *3 (W.D. Wash. Nov. 15, 2022) (citing Hoffman-LaRoche, 439 U.S. at 181) (dissent) ("While this Court does not doubt that the Supreme Court would agree that district courts should not solicit litigation, it never held that conditional certification or involvement in the notice process amounts to 'stirring up' litigation.").

See, generally, Wiliams Decl. (Dkt. 22.4), Morning Decl. (Dkt. 22.5); Landa Decl. (Dkt. 22.6). Critically, Defendants do not deny the existence of the policy alleged by Plaintiffs – that is, they do not deny that TopHat made deductions for damage claims from Plaintiffs' and class members' pay, or that these deductions resulted in collective action members not receiving any pay for their final weeks of work. In sum, Plaintiffs have met their burden, at this early stage of the case, to show that they and other delivery drivers who worked for TopHat in the United States between May 2020 and the present, were classified as independent contractors, and separated from employment, are similarly situated.

## II. ARGUMENT

### A. Conditional Certification is Subject to a Lenient Standard

At this early stage, "Plaintiffs only need to make a minimal showing that others in the potential class are similarly situated." Mielke v. Laidlaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) This determination is made using a "lenient interpretation" of the term "similarly situated." Id. Courts in this District have repeatedly made clear that, at the conditional certification stage, "the court does not resolve factual disputes or decide substantive issues going to the merits." Larsen v. Clearchoice Mobility, Inc., 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011). Consequently, "[a]t this initial stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" Nicks v. Koch Meat Co., Inc., 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (quoting Bergman v. Kindred Healthcare, Inc., 949 F. Supp. 2d 852, 855 (N.D. Ill. 2013)).[2]

---

[2] Defendants cite to West v. Verizon Commun., Inc., 2009 WL 2957963, at *4 (M.D. Fla. Sept. 10, 2009) for the proposition that "Plaintiffs must demonstrate that they are similarly situated to proposed class members in the context of the factors that determine employee status." Dkt. 36 p. 18. However, the magistrate judge in West "did not use the two-tiered analysis for putative class actions under FLSA." Id at *3. West is inapposite because, In the Seventh Circuit, as this Court has made clear, and as Defendants recognize, the two-step approach is used.

Importantly, Plaintiffs' and collective action members' circumstances need only be similar, not identical. See Jirak v. Abbott Laboratories, Inc., 566 F. Supp. 2d 845, 848–49 (N.D. Ill. 2008) ("Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay."); Garza v. CTA, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001) ("That the plaintiffs and other potential plaintiffs may have different jobs ... [and] earn different amounts of money ... does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay."). In a similar vein, this Court's inquiry at this stage is whether they are similarly situated in the respects relevant to Defendants' "common policy or plan." See Russell 575 F. Supp. 2d at 933; Flores v. Lifeway Foods, Inc., 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003). As this Court has recognized "concerns regarding a lack of common facts among potential collective members and the need for individualized inquiries should be raised at step two, not step one." Kujat v. Roundys Supermarkets, Inc., 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019) (Leinenweber, J.)

Defendants inject into their Opposition criteria which are not relevant to the conditional certification analysis, and are not properly considered by the Court at this stage.[3] For example,

---

[3] The cases Defendants cite to in arguing against conditional certification are distinguishable. In Adair v. Wisconsin Bell, Inc., 2008 WL 4224360, at *10 (E.D. Wis. Sept. 11, 2008), plaintiffs "allege[d] they are similarly situated to the putative class members because of their employer's common practice of permitting unscheduled work without pay, but they have not made a modest factual showing that this was their employer's practice even as to themselves." In Nogueda v. Granite Masters, Inc., 2010 WL 1521296, at *4 (N.D. Ind. Apr. 14, 2010), the court denied conditional certification finding that "all that Nogueda has presented to [the court] in support of his required modest factual showing is his own affidavit. This is simply not enough to require that notice be sent to other employees." In Gromek v. Big Lots, Inc., 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) the court denied conditional certification in light of a decertification order in another case involving identical allegations against the same employer. In Boyd v. Alutiiq Glob. Sols., LLC, 2011 WL 3511085, at *4 (N.D. Ill. Aug. 8, 2011), the court explained that "Plaintiffs have failed to provide sufficient support for their allegations that Alutiiq had a policy that affected anyone beyond the Great Lakes location at which Plaintiffs worked.". Finally, in Lee v. Sky Plumbing, Inc., 2010 WL 745770, at *2 (M.D. Fla. Mar. 1, 2010), an out-of-circuit case, the declarations submitted by Plaintiff did not "provide[] any concrete indicia of Plaintiff's or Mitchell's job requirements, Defendants' payment practices or policies, or the similarities between putative class members and why they are similarly situated to Plaintiff."

Defendants argue that "individualized inquiries are clearly necessary to show whether deductions were made by TopHAT in accordance with the individual Independent Common Carrier Agreements" and "whether [drivers'] compensation fell below the minimum wage in any given pay period Dkt. 36, pp. 9, 19. However, these are questions of damages,[4] which are not properly addressed at the conditional certification stage.[5] "Whether or not each deduction could be credited towards the FLSA minimum wage" and "[w]hether particular expenses may be considered wages" (Dkt. 36, pp. 30-31) are also questions which are not properly addressed at this stage, and which ultimately go to the issue of damages.[6] Defendants' arguments about manageability are borrowed from the Rule 23 class certification analysis, which is not applicable to conditional certification, and must be disregarded.[7] Similarly, Defendants' argument that "potential liability to all delivery

---

[4] Defendants cite to Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 773 (7th Cir. 2013), which was decided at the decertification stage, and thus involved a more stringent analysis. In any event, in this case, unlike in Espenscheid, there is no suggestion that the case would "require 2341 separate evidentiary hearings" to determine damages. Id. Blakley v. Celadon Grp., Inc., 2017 WL 6989080, at *4 (S.D. Ind. Oct. 18, 2017) is likewise distinguishable because "a significant amount of discovery ha[d] been completed" and, as a result, the court applied "an intermediate standard" in ruling on the motion for conditional certification. Likewise, in Armstrong v. Wheeels Assured Delivery Sys., Inc., 2016 WL 1270208, at *5 (S.D. Ind. Mar. 30, 2016) "a significant amount of discovery ha[d] been completed" making an "intermediate level of scrutiny" appropriate. Fuller v. Jumpstar Enterprises, LLC, 2021 WL 5771935, at *3 (S.D. Tex. Dec. 6, 2021) and Cotton-Thomas v. Volvo Group N.A., LLC, 2021 WL 2125003, at *1 (N.D. Miss. May 25, 2021) both followed Swales v. KLLM Transport Services, LLC, 985 F.3d 430 (5th Cir. 2021) and did not apply the two-step approach used in this Circuit.

[5] See, e.g., Stephens v. Farmers Rest. Group, 291 F. Supp. 3d 95, 106 (D.D.C. 2018) (quoting Blount v. U.S. Sec. Associates, 945 F. Supp. 2d 88, 94-96 (D.D.C. 2013)) (internal citation omitted) ("defendants cannot defeat conditional certification by pointing to immaterial variations in how the improper policies alleged by the plaintiff were applied. Conditional certification is also often appropriate despite differences among putative class members that go to damages, because a trial on liability may be followed by 'individualized damages calculations.'"); see also Madden v. Corinthian Colleges, Inc., 2009 WL 4757269, at *3 (N.D. Ill. Dec. 8, 2009) ("The fact that some Admissions Representatives may have worked fewer overtime hours than Madden or Alexander speaks only to the amount of potential damages, and not to whether the Admissions Representatives were subject to a similarly plan or policy.");

[6] Indeed, Hernandez v. Jrpac Inc., 2016 WL 3248493, at *1 (S.D.N.Y. June 9, 2016), which Defendants cite to, is a decision issued following trial.

[7] Wynn v. Express, LLC, 2012 WL 386716, *1 (N.D. Ill. Feb. 6, 2012) ("at conditional certification stage, [t]he required showing is less stringent than that required to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure."); Perez v. Radioshack Corp., 552 F.Supp.2d 731, 744 (N.D. Ill. 2005) (FLSA's "similarly-situated requirement has been interpreted as 'considerably less stringent' than that applied to class actions certified under Rule 23.").

4

drivers can[not] be determined on the basis of common evidence" (Dkt. 36, p. 10) improperly substitutes the Rule 23 class certification analysis for the "similarly situated" inquiry.[8]

### B. Plaintiffs have Sufficiently Alleged a Common Policy that Violates the FLSA[9]

Contrary to Defendants' arguments, Plaintiffs have shown that they are similar to the proposed collective action members, in all relevant respects. Specifically, Plaintiffs, along with declarant Jovanni Landa, worked as delivery drivers for TopHat; were classified as independent contractors; signed virtually identical agreements; had deductions taken out of their pay for damage claims; and, as a result of those deductions, did not receive any wages during the final weeks of their work for TopHat.[10] See, generally, Wiliams Decl. (Dkt. 22.4), Morning Decl. (Dkt. 22.5); Landa Decl. (Dkt. 22.6).[11] Critically, Defendants do not deny the existence of the policy alleged by Plaintiffs –

---

[8] See, e.g., Canava v. Rail Delivery Serv. Inc., 2020 WL 2510648, at *7, *12 (C.D. Cal. Feb. 27, 2020) ("the "similarly situated" standard of the FLSA is much lower than the rigorous Rule 23 analysis…Plaintiff['s] assertion that the Drivers all signed the Contract or a materially similar agreement—which Defendants do not contest —is sufficient to establish the Drivers are "similarly situated."" ); Spellman v. Am. Eagle Express, Inc., 2011 WL 4102301, at *1, n.1 (E.D. Pa. May 18, 2011) (" Plaintiffs have shown they and other AEX delivery drivers are similarly situated in that they all perform the same job functions and are all classified by AEX as 'independent contractors,' thus negating their entitlement to overtime pay.").

[9] Defendants argue that it would be "a waste of the Court's and the litigants' time and resources" to notify the collective of this case (Dkt. 36 p. 9). The cases Defendants rely on for this proposition are entirely distinguishable from the instant case. In Molina v. First Line Sols. LLC, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007), the parties had "already engaged in significant discovery" when conditional certification was briefed. In Adair, while plaintiffs "allege[d] they are similarly situated to the putative class members because of their employer's common practice of permitting unscheduled work without pay, but they have not made a modest factual showing that this was their employer's practice even as to themselves." 2008 WL 4224360, at *10. That is not the case here, as Plaintiffs have identified a clear compensation policy whereby delivery drivers are deprived of minimum wage in some workweeks. In fact, courts have recognized that conditional certification furthers the goal of judicial economy. See e.g., Russell v. Illinois Bell Tel. Co., 575 F. Supp. 2d 930, 934 (N.D. Ill. 2008) (adopting plaintiff's argument that conditional certification would "serve the interest of judicial economy by 'limit[ing] the proliferation of multiple lawsuits.'").

[10] Defendants point out that "some Carriers are compensated by the load, other Carriers are paid by the stop, and other Carriers are paid based upon a percentage of the retail value of the load" (Dkt. 36 p. 12). However, **none** of these compensation structures guarantees that a delivery driver will be paid minimum wage.

[11] While Defendants take issue with the declarations, including the lack of allegations about other drivers' work, courts have made clear that Plaintiffs are not required to provide this level of detail at the conditional certification stage. See, e.g., Hayes v. Thor Motor Coach, Inc., 502 F. Supp. 3d 1342, 1349 (N.D. Ind. 2020) ("Ms. Hayes' affidavits, coupled with Thor's handbook describing the incentive production program as 'discretionary' and based on eligibility, are enough to establish Ms. Hayes' early burden here. The credibility of Ms. Hayes and her supporting affiants—which Thor is essentially attacking—cannot be decided at this stage."); see also Heckler v. DK Funding, LLC, 502 F. Supp.

5

that is, they do not deny that TopHat made deductions for damage claims from Plaintiffs' and class members' pay, or that these deductions resulted in collective action members not receiving any pay for their final weeks of work.

Indeed, courts in this District and beyond have routinely granted conditional certification based on the sort of evidence presented by Plaintiffs in this case.[12] For example in <u>Cervantes v. CRST Intl., Inc.</u>, 2021 WL 7185079, at *4 (N.D. Iowa Jan. 25, 2021), another case involving delivery driver misclassification, the court found that conditional certification was warranted where:

> Plaintiffs and one other Driver have filed declarations stating that they were misclassified as independent contractors and that this misclassification resulted in their liability for certain work-related expenses which ultimately caused their payment to fall below the minimum wage in certain workweeks. These declarations also show that plaintiffs and other Drivers were all required to sign ICOAs that were materially the same and were all subject to the same work conditions. These statements provide a sufficient factual basis to find, at this stage, that plaintiffs and the other Drivers were all allegedly harmed in a similar manner under the ICOAs in violation of the FLSA.

The court in <u>Cervantes</u> went on to explain that while "the mere fact that plaintiffs were allegedly

---

2d 777, 780 (N.D. Ill. 2007) ("Defendants' argument that Heckler must produce evidence that other employees wish to join the class before the class notice may be sent puts the cart before the horse.").

[12] Indeed, motions for conditional certifications are typically decided on the pleadings and any affidavits submitted by Plaintiffs. <u>See</u>, <u>e.g.</u>, <u>Terry v. TMX Finance LLC</u>, 2014 WL 2066713, at *3 (N.D. Ill. May 19, 2014) (Leinenweber, J.) (granting nationwide collective action based on several declarations submitted by plaintiff); <u>Nicks</u>, 265 F. Supp. 3d at 851 (N.D. Ill. 2017) (collecting cases) ("several courts in this District have conditionally certified a collective action where multiple employees provided affidavits declaring that they consistently worked overtime without being compensated"); <u>Pieksma v. Bridgeview Bank Mortg. Co., LLC</u>, 2016 WL 7409909, at *5-*6 (N.D. Ill. Dec. 22, 2016) (granting conditional certification where plaintiffs submitted declarations from employees at multiple locations with multiple supervisors indicating that they were not paid overtime despite working more than 40 hours per week); <u>Howard v. Securitas Sec. Services, USA Inc.</u>, 2009 WL 140126, at *2 (N.D. Ill. Jan. 20, 2009) ("the plaintiffs must demonstrate, through the pleadings and affidavits, a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members."); <u>Iannotti v. Wood Group Mustang</u>, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022) (quoting <u>Beeson v. C-Cat, Inc.</u>, 2020 WL 7425339, at *2 (S.D. Ind. Dec. 18, 2020) ("The modest factual showing is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties.").

6

misclassified as independent contractors is not an inherent FLSA violation . . . Plaintiffs [] have sufficiently detailed how their earnings were affected by this misclassification and how such misclassification similarly harmed other Drivers subject to the same agreements and conditions." Id. Similarly, the court in Canava, 2020 WL 2510648, at *7 rejected Defendants' argument that "Plaintiff is not 'similarly situated' to the Drivers because there are several factual differences between Plaintiff and other Drivers that would result in different outcomes pursuant to the "economic realities test.". The court explained that "Plaintiff has established that the Drivers are 'substantially similar' for the purpose of establishing whether or not they are independent contractors, and thereby they 'share a similar issue of law or fact material to the disposition of their FLSA claims.'" Id.

### C. The Court Need Not Consider Competing Evidence Presented by Defendants

It is well-established that "[a]t this initial stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" Nicks, 265 F. Supp. 3d at 849 (quoting Bergman, 949 F. Supp. 2d at 855). "Once plaintiffs have met their burden, defendants may not thwart conditional certification merely by contradicting plaintiffs' claims, even if defendants provide 'voluminous documentation' purporting to show that no violations occurred." Stephens v. Farmers Rest. Group, 291 F. Supp. 3d 95, 105–06 (D.D.C. 2018) (quoting Bhumithanarn v. 22 Noodle Mkt. Corp., No. 14-cv-2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015)). Rather, "district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." Dinkel v. MedStar Health, Inc., 880 F. Supp. 2d 49, 53 (D.D.C. 2012); Larsen, 2011 WL 3047484, at *1 (at the conditional certification stage, "the court does not resolve factual disputes or decide substantive issues going to the merits.").

7

Defendants submit over 100 pages of exhibits, including several declarations from delivery drivers, with their Opposition to Plaintiffs' Motion for Conditional Certification. See Dkt. 36.1. The declarations submitted by Defendants "are quintessential examples of 'happy camper' declarations, and the Court need not consider them at this stage in the litigation." Piazza v. New Albertsons, LP, 2021 WL 365771, at *6 (N.D. Ill. Feb. 3, 2021) (quoting Barrett v. NorthShore Univ. Healthsystem, 2019 WL 4412726, at *4 (N.D. Ill. Sept. 16, 2019)). Conditional certification is not the time to "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant" so the Court should not attempt to determine whether the experiences of the declarants assembled by the Defendants are more or less typical than the experiences of the opt-in plaintiffs and Plaintiff. Id. (quoting Bergman, 949 F. Supp. 2d at 855–56 (citation omitted). Courts routinely reject such "happy camper" declarations as submitted by Defendants here and find that such declarations carry no weight at the conditional certification stage.[13]

Specifically, in other cases involving misclassification claims brought by delivery drivers, courts have declined to consider the sort of competing evidence presented by Defendants in this case. See Carter v. XPO Last Mile, Inc., 2016 WL 5680464, at *4 (N.D. Cal. Oct. 3, 2016) ("Although XPO may dispute some of plaintiffs' allegations – for example, whether the typical Delivery Driver could or did negotiate the rates of services under the DSAs . . . worked exclusively or primarily for XPO [and] was required to wear a uniform or carry an XPO logo on their vehicle – those disputes will be considered at the 'second step' of the FLSA certification process."); see

---

[13] See Chapman v. Saber Healthcare Group, LLC, 623 F. Supp. 3d 664, 678 (E.D. Va. 2022) (quoting Spencer v. Macado's Inc., 2019 WL 4739691, at *4 (W.D. Va. Sept. 27, 2019)) ("Defendants point to the eight declarations in support of their opposition brief to argue that Plaintiff and the opt-ins were not victims of a common policy or plan to violate the FLSA. But these declarations–known as 'happy camper' declarations – 'are generally entitled to little or no weight at this stage, given the risk that the employer secured such declarations through explicit or implicit coercion.'") (internal citation omitted).

8

also Flores v. Velocity Exp., Inc., 2013 WL 2468362, at *7 (N.D. Cal. June 7, 2013) ("the question at this stage is not whose evidence . . . is more believable, but simply whether plaintiffs have made an adequate threshold showing. The Court will consider 'the disparate factual and employment settings of the individual plaintiffs' if and when Defendant makes a motion to decertify.").

Yet, even if the Court were to consider Defendants' evidence, which it should not, Defendants' declarations actually support Plaintiffs' motion for conditional certification. To that end, in arguing that TopHat drivers are properly classified as independent contractors, Defendants admit that Plaintiffs and its other drivers sign uniform Independent Common Carrier Services Agreements. Dkt. 36 at 11; Dkt. 36.1 at pp. 3-4, Trensch ¶¶ 6-8.) Defendants also admit that deductions are taken from drivers' pay. (Dkt. 36 at pp. 15-16.) While Defendants claim their drivers were properly classified as independent contractors and the deductions were lawful, it is clear from their own submission that Defendants had a common policy of classifying drivers as independent contractors and deducting from their pay. For purposes of step-one conditional certification, this is sufficient. See Hudson v. Protech Security Group, Inc., 237 F. Supp. 3d 797, 802 (N.D. Ill. 2017) (defendant's admission that it classified plaintiff and other employees as independent contractors, even if such classification was at the workers' request, showed a common policy that supported conditional certification).

**D. The Court need Not Reach the Substantive Issue of Plaintiffs' Misclassification**

Although Defendants spend a significant portion of their brief discussing the economic realities FLSA's economic realities test, the Court need not, and indeed cannot, at this early stage of the proceedings, decide whether Plaintiffs were employees under the FLSA. See Nicks, 265 F. Supp. 3d at 849 (quoting Bergman, 949 F. Supp. 2d at 855) ("[t]he court does not make merits

9

determinations" at the conditional certification stage).[14] Instead, it is sufficient for Plaintiffs to allege that they and other collective members were subject to TopHat's common classification and compensation policies.

Nevertheless, at this early stage, Plaintiffs have made a sufficient preliminary showing that they were employees of TopHat as a matter of law. Specifically, Plaintiffs have shown that they made deliveries full-time, and worked exclusively for TopHat[15] for more than a year; that they were paid a set rate for deliveries; that they were required to undergo an orientation, a background check and a drug test; follow a dress code; and follow TopHat's instructions, including the time windows assigned by TopHat, when making deliveries. See Wiliams Decl. (Dkt. 22.4), Morning Decl. (Dkt. 22.5); Landa Decl. (Dkt. 22.6).

Nor does the "fact intensive inquiry" under the economic realities test preclude conditional certification.[16] In granting conditional certification in a similar case involving truck drivers who were classified as independent contractors and not paid their wages for their final weeks of work,

---

[14] While Defendants cite to Pfaahler v. Consultants for Architects, Inc., No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000), that case is limited to its specific facts, and other courts have declined to follow its analysis. See, e.g., Mares v. Caesars Ent., Inc., 2007 WL 118877, at *5 (S.D. Ind. Jan. 10, 2007) ("the factual inquiries in [Pfaahler] involved the specific job duties of the potential plaintiffs; here, there is no allegation that any of the security officers had different duties."). In re FedEx Ground Package System Employment Practices Litig'n, 662 F.Supp.2d 1069 (N.D.Ind.2009 also has no bearing on the Court's analysis here because its "decision [] to deny conditional certification of the FLSA claim of the prospective class of drivers was focused on the court's determination that the named plaintiff was not an adequate representative of the prospective class." Hose v. Henry Industries, Inc., 49 F. Supp. 3d 906, 914 (D. Kan. 2014), order clarified sub nom. Hose v. Henry Industries, 2014 WL 5510927 (D. Kan. Oct. 31, 2014).Finally, Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 886 (7th Cir. 2011) involved class certification under Rule 23.

[15] TopHat suggests that Williams and Morning performed work for other companies while working for TopHat. Plaintiffs dispute this claim, but, in any event, it is improper for the Court to resolve such factual disputes at the conditional certification stage.

[16] The cases Defendants rely on for this proposition are distinguishable. In Armstrong v. Wheeels Assured Delivery Sys., Inc., 2016 WL 1270208, at *5 (S.D. Ind. Mar. 30, 2016), the parties had conducted a "significant amount of discovery" and the court applied an "intermediate level of scrutiny". Similarly, in Brant v. Schneider Natl. Inc., 20-C-1049, 2023 WL 4042016, at *4 (E.D. Wis. May 4, 2023), the court appears to have relied on a more fully developed factual record, citing the testimony of multiple drivers.

Judge Pallmeyer explicitly rejected defendant's argument that conditional certification was inappropriate due to the fact intensive inquiry under the economic realities test. Dawkins, 2021 WL 4125086, at *13-14 ("In short, the possibility that a fact-intensive inquiry may be necessary later on does not preclude conditional certification at stage one."). See also, e.g., Carter, 2016 WL 5680464, at *5:

> I am also not persuaded by the analyses of courts that reject conditional FLSA certification in independent contractor misclassification cases solely because the independent contractor analysis is fact intensive and because there are alleged differences between class members (*e.g.*, hours worked, investments made). If that were the test, no independent contractor misclassification case could be certified under [the] FLSA.

See also Flores, 2013 WL 2468362, at *7 ("Velocity's second argument, that the misclassification of workers as independent contractors 'involves a fact-intensive inquiry that does not lend itself to collective treatment' also fails. The need for such an inquiry has not prevented courts, such as those cited above, from routinely certifying FLSA cases based on allegations and affidavits similar to those presented here. ") (internal citation omitted) (collecting cases); Canava, 2020 WL 2510648, at *7 ("the Drivers are 'substantially similar' for the purpose of establishing whether or not they are independent contractors . . . Plaintiff need not—as Defendants assert—also show that the FLSA Drivers are not 'similarly situated' for the underlying FLSA claim.").

    While Defendants seek to limit the collective to delivery drivers who worked for specific clients - Costco, Wayfair, La-z Boy, and General Electric (Dkt. 36 p. 34) – this is an arbitrary limitation, which ignores the fact that the minimum violations alleged by Plaintiffs were committed by TopHat, and were not dependent on the client Plaintiffs and collective action members performed deliveries for. The scope of Plaintiffs' proposed collective is therefore proper. Indeed, as another court noted, in rejecting *decertification*, Defendants' uniform decision to

11

classify delivery drvers as independent contractors is an important consideration. See Collinge v. IntelliQuick Delivery, Inc., 2015 WL 1292444, at *8 (D. Ariz. Mar. 23, 2015) (quoting Morgan v. Fam. Dollar Stores, Inc., 551 F.3d 1233, 1264 (11th Cir. 2008)) ("it bears noting that despite IntelliQuick's contention that it exerts disparate control over its drivers, IntelliQuick uniformly treats all of its drivers as independent contractors, and this decision does not turn on a sing le individualized factor. "There is nothing unfair about litigating a single corporate decision in a single collective action").

Relatedly, Defendants argue that the instructions for the deliveries drivers made are dictated by customer requirements in an attempt to disavow any control exercised by TopHat. Similar arguments have been repeatedly rejected by courts around the country. In fact, courts have overwhelmingly held that employers cannot excuse the control they exercise because of customer requirements. See, e.g., Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1316 (11th Cir. 2013) ("Business needs cannot immunize employers from [statutory] requirements. If the nature of a business requires a company to exert control over workers to the extent that [Defendants have] allegedly done, then that company must hire employees, not independent contractors."); see also Green v. XPO Last Mile, Inc., 2022 WL 4380959 at *5 (D. Conn. Sept. 22, 2022) ("I am persuaded by the plaintiffs' showing that XPO utilized common practices and policies akin to the type of meticulous control that an employer would exercise over an employee rather than an independent contractor."); DaSilva, 377 F. Supp. 3d at 94 ("Why [the delivery company] controls its drivers, however, is irrelevant to the [misclassification] inquiry"). As a result, Defendants' arguments fail.

Nor is the "formation of [] business entities" by some collective action members (Dkt. 36 p. 26) germane to the misclassification analysis. Courts faced with claims under the FLSA and state wage laws have repeatedly eschewed distinctions between claims brought by drivers in an

individual capacity and those who operated under a company name.[17] See, e.g., Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) (it would "honor form over substance [to hold that] when Joe Driver drives his truck without incorporating he is an employee, but if he drives his truck under the aegis of Joe Driver, Inc., then he is an independent contractor.").

### E. Plaintiffs' Proposed Notice and Distribution Plan is Proper

Defendants raise three objections to Plaintiffs' proposed Notice, none of which have merit. First, Defendants oppose the issuance of notice by text message, arguing that "notice via first class mail is the preferred and most reliable method for delivering notice." However, in recent years, courts have increasingly recognized that notice by text message is the most reliable means of reaching collective action members particularly where, as here, they are transitory. See e.g., Campbell v. Marshall Intl., LLC, 2022 WL 3684571, at *5 (N.D. Ill. Aug. 25, 2022). "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these

---

[17] See Depianti v. Jan-Pro Franchising Intern., Inc., 465 Mass. 607, 621 (2013) (employers cannot avoid compliance with Massachusetts independent contractor statute by interjecting a corporate intermediary between themselves and the employee); Martins v. 3PD, Inc., 2013 WL 1320454, at *16 (D. Mass. Mar. 28, 2013)(holding that a delivery company "cannot allow [the plaintiff] to incorporate and then use that incorporation as a shield for … Section 148B liability."); In re FedEx Ground Package Sys., 712 F.Supp.2d 776, 793 (N.D. Ind. 2010)(applying state law "control" test equally to both incorporated and unincorporated delivery drivers where employer treated both groups the same); Parilla v. Allcom Constr. & Install. Svcs., LLC, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 (M.D. Fla. 2009) (worker was an employee, and his incorporation was a "façade"); Afinson v. FedEx Ground, 244 P.3d 32 (Wash. Ct. App. 2010) (disregarding delivery drivers' personal corporate entities in analysis of the drivers' individual employment status); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employment status of mechanics who formed their own corporations must be determined under the applicable classification test) (citing Gustafson v. Bell Atlantic Corp., 171 F.Supp.2d 311 (S.D.N.Y. 2001)) (finding employee status despite incorporation); see also Cummings v. Cenergy Intl. Services, LLC, 2017 WL 4180972, at *6 (E.D. Cal. Sept. 20, 2017) (in context of FLSA case, explaining that "Plaintiffs allege that the corporate entities were formed by Plaintiffs as a specific requirement of Cenergy to either obtain work with Chevron or to continue work with Chevron . . .These allegations create a reasonable inference that the corporate entities were created for no purpose of Plaintiffs and solely for the benefit of Cenergy, maintained only as a corporate fiction . . ."); Bowerman v. Field Asset Servs., Inc., 242 F. Supp. 3d 910, 932 (N.D. Cal. 2017) (certifying class of individuals performing property preservation services who brought misclassification claims under California law) ("all vendors execute the same or similar independent contractor agreement with at-will termination provisions....FAS fails to identify any evidence to convince me otherwise. And while FAS again points to differences among vendors' corporate form, I have twice discounted that argument's relevance to certification.") (internal citations and quotation marks omitted).

13

methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." Calvillo v. Bull Rogers, Inc., 2017 WL 3172843, at *6 (D.N.M. July 25, 2017).[18]

Second, Defendants argue that a reminder notice is unnecessary. However, and in light of the long hours and transitory nature of the collective action members' work, a reminder notice is necessary to ensure participation in this case. See, e.g., Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); Sanchez v. Sephora USA, Inc., 2012 WL 2945753, at *6 (N.D.Cal. July 18, 2012) (authorizing a reminder notice on the grounds that such notice "is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in").

Third, Defendants take issue with the substance of the Notice, arguing that characterizing the lawsuit as one for "unpaid wages" is inaccurate. However, while Plaintiffs argue that the collective action members were misclassified, the ultimate aim is to recover unpaid wages for these individuals. It is important for the collective action members to understand that Plaintiffs are seeking to recover unpaid wages on their behalf, and they will be more likely to join the case if

---

[18] See also Dempsey v. Jason's Premier Pumping Services, LLC, 2015 WL 13121134, at *2 (D. Colo. 2015) (authorizing notice by mail, email and text message, citing the mobile nature of collective action members); Foster v. Nova Hardbanding, No. 15-1047 CG/LAM, 2016 WL 4492829, at *6 (D.N.M. 2016) (authorizing notice by first-class mail and e-mail); Regan v. City of Hanahan, No. 16-1077-RMG, 2017 WL 1386334, at *3 (D.S.C. 2017) ("[M]ail, email and text messaging [notice] is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move."); Irvine v. Destination Wild Dunes Mgmt., Inc., 132 F.Supp.3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."); Bhumithanarn v. 22 Noodle Mkt. Corp., No. 14–2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (authorizing notice by text ("the evidence before the Court suggests that text messaging is Defendants' preferred method of employee communication").

they understand that the case is not simply about the legal classification of delivery drivers, but also involves potential recovery of unpaid wages.

Finally, Defendants take issue with the language "This is a court authorized notice." However, this language has been approved by courts in dozens of other FLSA cases,[19] and, contrary to Defendants' arguments, it does not give an improper endorsement to the merits of the case, since the Notice also states clearly that "there has not been a decision by the court as to whether the Plaintiffs' position or TopHat's position is the correct one." See Dkt. 23.1. Plaintiffs' proposed Notice should be approved by the Court.

### III.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Conditional Certification and allow notice to issue to all delivery drivers who worked for TopHat in the United States between May 2020 and the present, were classified as independent contractors, and separated from employment.

---

[19] The form of notice proposed by Plaintiffs in this case has routinely been approved by courts, including in the following cases: Grove v. Meltech, Inc., 2020 WL 7133568, at *6 (D. Neb. Dec. 3, 2020), reconsideration denied, 2021 WL 106267 (D. Neb. Jan. 12, 2021); Scarpino v. Imagination Industries, Inc., 2021 WL 1267270, at *1 (D. Neb. Apr. 6, 2021); Grove v Beer Barn Corp. et al., 1:20-CV-00027, Dkt. 27 (S.D. Iowa Apr. 21, 2021).

August 21, 2023                                   Respectfully submitted,

*/s/ Olena Savytska*
Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive., Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

*Attorneys for the Plaintiffs and the Proposed FLSA Collective*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 21st day of August, 2023.

*s/Olena Savytska*
Olena Savytska