**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LEAROY WILLIAMS and JONATHAN MORNING**, individually and on behalf of all other similarly situated, | |
| **Plaintiffs,** | |
| **v.** | |
| **TOPHAT LOGISTICAL SOLUTIONS, LLC, and ATLAS LOGISTICS INC.,** | **Case No. 23 C 1573** |
| **Defendants,** | **Judge Harry D. Leinenweber** |
| **v.** | |
| **MORNINGTYME DELIVERIES, LLC, WILLIAMS SERVICES, LLC and BIG BLACK MOVERS, LLC,** | |
| **Third-Party Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Leroy Williams ("Williams") and Jonathan Morning ("Morning") filed a First Amended Complaint (Dkt. No. 18, Complaint ("Compl.")) on behalf of current and former delivery drivers challenging Defendants TopHat Logistical Solutions, LLC's ("TopHat"), an Illinois corporation, and Atlas Logistics, Inc.'s ("Atlas"), an Indiana corporation, allegedly unlawful practice of misclassifying delivery drivers as independent contractors instead of employees in violation of the Fair Labor Standards Act ("FLSA"). The Complaint also alleges state law violations of the Iowa Wage Payment and Collection Law, the Nebraska Wage Payment and Collection Act, and the Illinois Wage Payment and Collection Act ("IWPCA"). Defendants TopHat and Atlas, as Third-Party Plaintiffs, filed a Third-Party Complaint (Dkt. No. 26, Third Party Complaint ("TPC"))

against three independent companies, Morningtyme Deliveries, LLC ("Morningtyme"), Big Black Movers, LLC ("BBM"), and Williams Services, LLC ("Williams Services"), (collectively, "Third-Party Defendants"). Plaintiff Morning serves as the sole owner of Morningtyme, and Plaintiff Williams serves as the sole owner of BBM and Williams Services. Before the Court is Third-Party Defendants' Motion to Dismiss the Third-Party Complaint (Dkt. No. 39), Defendants' Motion to Strike "In the Alternative" Counts IV and V of the First Amended Complaint (Dkt. No. 28), and Plaintiffs' Motion for Conditional Certification (Dkt. No. 21).

For the reasons stated herein, the Court grants Third-Party Defendants' Motion to Dismiss the Third-Party Complaint, grants Defendants' Motion to Strike "In the Alternative" Counts IV and V, and grants Plaintiffs' Motion for Conditional Certification.

## I. <u>BACKGROUND</u>

Plaintiff Williams is a resident of Des Moines, Iowa and provided delivery services for TopHat in Iowa and Nebraska from approximately 2020 through November 2022. (Compl. ¶ 3.) Plaintiff Morning is also a resident of Des Moines, Iowa and provided delivery services for TopHat in Iowa and Illinois from approximately 2019 through September 2022. (*Id*. ¶ 4.) Morning and Williams worked as delivery drivers for TopHat, delivering furniture and appliances for TopHat's clients, such as Costco and Wayfair. (*Id*. ¶¶ 20, 31.) Defendant TopHat provides delivery services in the Midwestern states for companies like Costco, and contracts with individuals like Plaintiffs to drive a delivery truck and deliver merchandise to customers' homes. (*Id*. ¶ 20.) In February 2020, Atlas acquired TopHat and assumed successor liability. (*Id*. ¶¶ 8, 19.)

Plaintiffs filed their initial collective action complaint in this case on March 14, 2023, and their First Amended Complaint on May 25, 2023, asserting that Defendants misclassified them and other delivery drivers as independent contractors when they were employees, failed to pay them minimum wage for all hours worked, took improper deductions from their pay and forced

them to bear business expenses which should have properly been borne by TopHat, in violation of the FLSA, and Nebraska, Iowa, and Illinois state law. Plaintiffs allege a series of facts that allegedly demonstrates behavioral and financial control over the drivers of TopHat that renders the drivers employees under law. (Dkt. No. 1.)

In response to Plaintiffs' allegations, on April 28, 2023, Defendants TopHat and Atlas filed a Third-Party Complaint (Dkt. No. 16) against Morningtyme and BBM, owned by Plaintiffs Morning and Williams, respectively, and later filed an Amended Third-Party Complaint, adding Williams Services (owned by Williams) as a Defendant. (Dkt. No. 26.) On May 31, 2023, Plaintiffs moved for conditional certification of the collective action to include "all delivery drivers who worked for TopHat in the United States between May 2020 and the present, who were classified as independent contractors, and who separated from TopHat." (Dkt. No. 22, Motion for Conditional Certification, at 2.)

## II. DISCUSSION

### A. Motion to Dismiss Third-Party Defendants' Complaint

In their Third-Party Complaint, TopHat and Atlas ("TopHat") bring an indemnification claim and a breach of contract claim against each of the three independent companies ("independent companies") owned by Plaintiffs, or six counts in total. Third-Party Defendants now move to dismiss each count of the Third-Party Complaint.

#### 1. *Indemnification*

TopHat alleges that the common carrier agreements between TopHat and the independent companies require the companies to indemnify it from any costs it incurs as a result

of this lawsuit. That is, TopHat argues that Plaintiffs, through their companies, are liable to TopHat for any overtime-pay violations that TopHat may have committed against Plaintiffs.

Similar arguments have made their rounds in many circuits – whether through a claim of implied indemnity or contractual indemnity – though most courts have looked upon it unfavorably due to the public policy concerns it raises. Among the first to knock down this argument was the Fifth Circuit in *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260 (5th Cir. 1986). There, the Court affirmed a dismissal of an employer's counterclaim for indemnity against the plaintiff employees for the plaintiffs' FLSA claims because "to engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution, would undermine employers' incentive to abide by the [FLSA], and would differentiate among employees entitled to receive overtime compensation in a way which does not otherwise exist in the statute." *LeCompte*, 780 F.2d at 1264. Several other circuits followed suit. *See Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) (holding that an employer's third-party complaint seeking indemnity from employee for alleged FLSA violations was preempted by supremacy clause); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (affirming dismissal of corporate chairman's claims for contribution and indemnification against his-co-owner and the corporation's manager and vice president); *Scalia v. Employer Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1105 (9th Cir. 2020) (rejecting an implied cause of action for contribution or indemnification under the FLSA or federal common law).

The Seventh Circuit has not yet addressed this precise question of whether indemnity claims – particularly contractual indemnity provisions – that shift a defendant's damages and/or attorney's fees from FLSA litigation are unenforceable as violating public policy. That said, courts in this district, as in other circuit courts, have found that FLSA generally does not provide for third party indemnification claims because it would risk undermining the compensatory and deterrence

functions of the FLSA. *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, 2021 WL 1212796, at *7 (N.D. Ill. Mar. 31, 2021) (dismissing defendants' third-party complaint alleging implied indemnity on public policy grounds in FLSA lawsuit); *Strauss v. Italian Vill. Rest., Inc.*, 2012 WL 5389746, at *4 (N.D. Ill. Nov. 2, 2012) (dismissing indemnity claims and finding that the FLSA and Illinois Minimum Wage Law do not allow employers to "avoid [their] statutory responsibilities" by bringing actions against third-parties); *Emanuel v. Rolling in the Dough, Inc.*, 2010 WL 4627661, at *3-4 (N.D. Ill. Nov. 2, 2010) (dismissing indemnity claims in FLSA suit because they are preempted by federal law and not cognizable); *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1015-16 (N.D. Ill. 2009) (dismissing counterclaim for indemnity in FLSA suit).

Some district courts are divided on the issue that TopHat raises as its central contention: the FLSA public policy concerns are premature. If Plaintiffs are independent contractors, as TopHat contends, the FLSA does not apply, and its public policy does not govern the enforceability of the indemnity clause. Until the Court rules on the classification question, there is no public policy prohibiting Defendants' indemnification from independent contractors and to rule based on FLSA's public policy at this juncture would be premature. As TopHat notes, in *Spellman v Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 192 (D.D.C. 2010) and in *Dobbins v. Script fleet, Inc.*, 2012 WL 2282560, at *2 (M.D. Fla. June 18, 2012), the courts denied motions to dismiss employers' counterclaims for contractual indemnity, reasoning that they could not assess the viability of the indemnity claim until the employment relationship was determined on the merits. On the other hand, courts in other districts have concluded that the public policies underpinning the FLSA are implicated when FLSA claims are *filed,* meaning that indemnity counterclaims are unenforceable as violating FLSA public policy even if the plaintiffs are ultimately determined to be independent contractors. *See Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182, 1193-94 (E.D. Ca. 2017); *Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256 (E.D.N.Y. 2014). The

- 5 -

Court agrees with the myriad courts who have refused indemnity claims in FLSA misclassification cases on public policy grounds. The indemnity clause at issue here, if enforced, would disincentivize plaintiffs from bringing FLSA claims, flouting congressional intent.

TopHat notes its indemnity claim is contractual, but does not explain why contractual as opposed to implied immunity would change the public policy calculation, considering the well-settled principle under Illinois law that contracts which circumvent public policy are unenforceable and void. *See Brennan v. Connors*, 644 F.3d 559, 562 (7th Cir. 2011). The Court cannot see why employers should be permitted to transfer FLSA liability through contractual language. It is also worth noting that *Cummings* and *Fernandez*, *supra*, dismissed counterclaims of contractual immunity in the context of FLSA claims, as did *Simpkins v. DuPage Housing Auth.,* 2017 WL 1231718 (N.D. Ill. Mar. 28, 2017). Judge Norgle in *Simpkins* ruled that a contractual indemnity clause in an employment agreement with plaintiff workers did not apply on its face to the FLSA action brought by plaintiffs, but that *even if it had applied,* "it would contravene federal law and be pre-empted by the Supremacy Clause of the Constitution." *Simpkins*, 2017 WL 1231718, at *2 (emphasis added).

Third-Party Plaintiffs inaptly rely on *Costello v. Beavex, Inc.*, which did not deal with indemnity in the context of an FLSA claim. 2013 WL 2156052, at *3 (N.D. Ill. May 17, 2013). Defendants in *Simpkins* unsuccessfully relied on *Costello* and the court there distinguished *Costello* similarly. *Simpkins*, 2017 WL 1231718, at *2. *Itzep v. Target Corp.* is also inapplicable, as the court in *Itzep* permitted indemnity in the FLSA context only to the extent that it was a contractual agreement between *joint employers* concerning the allocation of risk under the FLSA. 2010 WL 2278349, at *24 (W.D. Tex. June 4, 2010) (emphasis added). There is no contention that the independent companies and Defendants entered into their common carrier agreements as joint employers.

- 6 -

Plaintiffs argue that the same policies that preclude Defendants' indemnity in connection with FLSA liability also preclude such a claim in connection with liability under the three state law statues under which it brings claims. Defendants present no authority supporting their position that Illinois law recognizes employers' claims for indemnity for liability under the Iowa Wage Payment and Collection Law, the Nebraska Wage Payment and Collection Act, and the IWPCA. "Illinois courts have held that in the absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant." *Villareal*, 601 F. Supp. 2d at 1017 (citing *Bernardi v. Village of North Pekin*, 135 Ill.App.3d 589 (1985)). The Court expects that state courts would find indemnity precluded in Iowa, Nebraska, and Illinois wage acts as well.

The Court thus finds the parties' contractual indemnity provision to be violative of public policy underlying the FLSA and state law. To find otherwise would thwart the public's interest in vindicating these rights by enabling employers to flout liability and disincentivize plaintiffs from bringing suit. Defendants' indemnity claims are dismissed with prejudice.

## 2. Breach of Contract

TopHat alleges breach of contract against the independent companies for the actions of their sole members – Williams and Morning – for "purporting to be [employees] of Third-Party Plaintiffs, in direct contradiction to [independent companies'] numerous commitments and agreements to operate as an independent contractor." (TPC ¶¶ 44-55.) Defendants refer to the fact that in the common carrier agreements with independent companies, it was established that the companies and their workers, *i.e.*, Plaintiffs Morning and Williams, would be independent contractors. But employment classification is not decided by a worker's signature on an employment contract. Rather, it is a legal conclusion based on facts surrounding the working relationship and is to be decided by a court. For the same public policy concerns noted above,

employers cannot conclusively write independent contractor status into stone and then hold their workers to this writing when they try to vindicate their rights under federal statutes. *Vanskike v. Peters,* 974 F.2d 806, 808 (7th Cir. 1992) ("status as an 'employee' for purposes of the FLSA depends on the totality of the circumstances rather than on any technical label"); *see Snead v. EOG Resources, Inc.,* 2017 WL 6294875, at *2 (W.D. Tex. Feb. 14, 2017) (employment status "not conclusively established" by contractual language).

TopHat also advances a breach of contract argument in their brief which was not featured in their complaint and which the Court need not, but will nevertheless, address. *See U.S. v. Williams,* 436 F.3d 767, 769 (7th Cir. 2006) (argument raised for first time in reply brief deemed waived). Defendants argue to the extent Morning and Williams were misclassified as independent contractors, they were misclassified by the independent companies. Thus, this misclassification was a breach of these *independent companies'* obligations to comply with relevant wage and hour laws pursuant to the common carrier agreements with Defendants.

Courts in other districts have found this exact argument unpersuasive as a second attempt at shifting costs under FLSA. In *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311 (S.D.N.Y. 2001), the employer argued the plaintiff worker's independent company was required by contract to comply with applicable federal and state laws, and any failure to pay overtime wages was a result of plaintiff's company's breach of this obligation. *Id*. at 327-328. The court held that "[w]hether or not [plaintiff's company] breached a contractual obligation, defendants' attempt to recover damages from [plaintiff's company] for overtime violations is an attempt to receive indemnification for FLSA liability," which would "permit employers to contract away their obligations under the FLSA." *Id*. at 328. Defendant employer in *Cordova v. FedEx Ground Package Systems, Inc.* took a chance at the same argument, and the court noted that "regardless of the appellation given the [breach of contract] claim by Defendant, I view it as an attempt by

- 8 -

Defendant to obtain indemnification" and ruled that the preceding rejection of defendant's indemnity claim "applie[d] with equal force" to the breach of contract claim. 104 F. Supp. 3d 1119, 1131 (D. Or. 2015). This Court would agree with its peers that this argument fails for the reasons Defendants' indemnity claim does not succeed.

Plaintiffs move to dismiss the Third-Party Complaint on two other grounds as well: the Complaint does not derive from Plaintiffs' claims as required by Federal Rule of Civil Procedure 14(a), and that it constitutes unlawful retaliation. Because the Court finds the Third-Party Complaint must be dismissed for the reasons stated above, the Court will end the analysis there save to note that Plaintiffs are permitted to seek leave to supplement their First Amended Complaint to add a retaliation claim pursuant to Federal Rule of Civil Procedure 15(d). *See Dobrov*, 2021 WL 1212796, at *3 (permitting plaintiff to supplement claim with retaliation claim after defendants filed indemnity counterclaim in FLSA suit) (citing FED. R. CIV. P. 15(d)).

For the reasons above, the Court grants Third-Party Defendants Motion to Dismiss Third-Party Plaintiffs' Complaint.

## B. <u>Motion to Strike Counts IV and V</u>

Defendants have separately moved to strike Plaintiff Williams' "in the alternative" pleading of Counts IV and V in Plaintiffs' First Amended Complaint. Counts IV and V are pled by Plaintiff Morning, alleging that Defendants violated the IWPCA by unlawfully deducting from his pay as a result of his services in Illinois and Iowa. (Compl. ¶¶ 4, 60, 65.) Plaintiff Williams piggybacks off Plaintiff Morning's allegations by pleading Counts IV and V in the alternative. Defendants move to strike these alternative pleadings because Williams, unlike Morning, never plead an essential element of the IWPCA claim – that he lived or performed work in Illinois.

The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Allegations may be stricken pursuant to Rule 12(f) "if

the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Further, "motions to strike are appropriate if they serve to expedite litigation." *Kawczynski v. F.E. Moran, Inc.*, 2015 WL 3484268, at *2 (N.D. Ill. June 1, 2015). District courts have "considerable discretion under Rule 12(f)." *Id.*

The IWPCA states that the act "applies to all employers and employees in this State." 820 Ill. Comp. Stat. 115/1. Applying that plain language, the Seventh Circuit has held that a plaintiff may not bring a claim under the IWPCA if they were not a resident of Illinois, and they performed no work in Illinois during the time period they allege the employer violated the statute. *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (affirming dismissal of IWPCA claim because plaintiff was not and never was a resident of Illinois nor performed any work in Illinois, finding the statute does not have "extraterritorial reach").

Plaintiffs argue that the relevant Illinois Department of Labor regulations were amended in 2014 to suggest that work performed outside of Illinois could be protected under the IWPCA. 56 Ill. Adm. Code 300.440. The court in *Cline v. FitzMark Chicago, Inc.* considered and rejected this exact argument, noting these regulations address the state agency's *jurisdiction* to review wage claims and do not concern the question of whether an employee who does not work or live within Illinois has standing to bring a civil suit under the IWCPA. 2023 WL 2711615, at * 6 (N.D. Ill. Mar. 30, 2023) (Maldonado, J.) The plaintiff in *Cline,* as the Plaintiffs do here, noted subsequent caselaw in the wake of the 2014 amendments that suggests there is no particular "quantum" of work that must be performed in Illinois by an out-of-state resident. *See, e.g., Watts v. ADDO Mgmt., L.L.C.*, 97 N.E.3d 75, 80 (Ill. App. Ct. 2018). However, as the court held in *Cline*, absent other Seventh Circuit caselaw to the contrary, this Court is bound by precedent in *Glass*. Further, courts in this district generally agree that at the pleading stage, a non-resident employee

- 10 -

need at least plead "they have done *some* work for an Illinois employer while physically present in Illinois to state an IWPCA claim." *Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *3 (N.D. Ill. Jan. 11, 2022) (emphasis in original) (collecting cases). Here, Plaintiff Williams has not alleged he performed any work for TopHat in Illinois.

As such, Plaintiffs' "in the alternative" Counts IV and V of the First Amended Complaint are dismissed with prejudice.

### C. <u>Motion for Conditional Certification</u>

The Court turns now to Plaintiffs' Motion for Conditional Certification of the collective action. Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a collective action on behalf of themselves and other similarly situated employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)) (internal quotations omitted). The FLSA does not specify how courts should handle collective actions, so they have "wide discretion" to determine how these suits should proceed. *Weil v. Metal Technologies, Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citing *Alvarez*, 605 F.3d at 449).

Courts in the Northern District of Illinois employ a two-step process. Step one is the conditional certification stage, and a plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). Courts employ a "lenient interpretation" of the term "similarly situated" at this stage. *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Plaintiffs must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). Conditional certification is not automatic

and to proceed as a collective action, plaintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If a plaintiff can show that others are similarly situated, the Court may "conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). The merits of a case are not decided at this stage and the Court does not "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013) (citation omitted). That analysis takes place during step two, "following the completion of the opt-in process and further discovery." *Russell,* 575 F. Supp. 2d at 933.

### 1. *Similarly Situated*

In support of their Motion for Conditional FLSA certification, Plaintiffs have submitted their own declarations and the declaration of Jovanni Landa – another driver who worked for TopHat and contended he never received payment for the last two weeks of work, that TopHat made deductions from his paycheck, and that he was at all times classified as an independent contractor. (Dkt. No. 23-4, Williams Declaration; Dkt. No. 23-5, Morning Declaration; Dkt. No. 23-6, Landa Declaration.) All three declarants assert that TopHat classified them as independent contractors; that they made deliveries for TopHat solely; that TopHat required they undergo a background check and drug test prior to work; that they were required to report to TopHat's warehouse at 5 am where they received a delivery manifest from TopHat with the day's assigned deliveries, the order in which the deliveries were to be made, and the time window for each; that

they were required to wear TopHat uniforms; that TopHat tracked their progress using a GPS application and required compliance with installation and assembly instructions for deliveries as well as customer interaction rules; and that TopHat deducted pay from their paychecks for alleged damage to customer property, withheld compensation for 45 days to cover purported damage claims, and did not pay them for their final weeks of work to cover said damage claims. (*Id.*) Plaintiffs assert that every putative collective member was required to sign TopHat's agreements which classified them as independent contractors and which stated that TopHat would "provide final accounting to [delivery driver] of all deductions made from the Operating Bond within 45 days from the date of the termination of this agreement.") (Dkt. No. 16-2, at 18.) The Court finds this evidence meets the lenient standard required at this first step and sufficiently presents an "identifiable factual nexus that binds the plaintiffs together as victims" of overtime law violations. *Briggs,* 2016 WL 1043429, at *2.

Defendants contest this finding. First, Defendants argue that Plaintiffs do not demonstrate they were misclassified as independent contractors. However, courts in this district and others routinely refrain from entertaining at this juncture whether as a matter of law Plaintiffs have demonstrated they were misclassified. At this stage, the Court does not make merits determinations. *See infra,* at 14.

Second, Defendants argue the Court should not grant conditional certification because to demonstrate putative plaintiffs are similarly situated would require individualized inquiries regarding whether TopHat engaged in unlawful deductions, which are not suitable for collective treatment. They note that were the Court to certify Plaintiffs' proposed collective action, the Court would need to analyze each Plaintiff's revenue and expenses, identify whether the workers actually performed deliveries in their final weeks of work, identify the rate of pay and actual amounts paid to each putative collective member and whether TopHat actually made deductions.

Several cases Defendants cited where the Court denied certification due to concerns about individualized inquiries involved instances where significant discovery had already been completed, so the Court applied a less lenient level of scrutiny. *Armstrong v. Wheels Assured Delivery Systems, Inc.*, 2016 WL 1270208, at *5 (S.D. Ind. Mar. 30, 2016) (applying "intermediate level of scrutiny" where "substantial discovery has been conducted"); *Blakley v. Celadon Grp., Inc.,* 2017 WL 6989080, at *1 (S.D. Ind. Oct. 18, 2017) (same). Defendants rely also on *Espenscheid v. DirectSat USA, LLC*, in which the Seventh Circuit affirmed decertification where calculating damages would "require 2341 separate evidentiary hearings" because the putative plaintiffs were paid on a piece-rate basis and did not perform the same jobs. 705 F.3d 770, 774 (7th Cir. 2013). For one, *Espenscheid*, *Armstrong*, and *Blakely* each dealt with certification (or decertification, in the case of *Espenscheid*) after discovery had taken place, when the Court and parties were more informed of putative class members and their respective damages. Here, neither party has noted any discovery that has taken place. The Court will not read *Espenscheid* to be a blanket indictment of certifying collective actions in piece-rate cases at this stage.

The Court instead opts to follow courts in this district and others that consistently decline to resolve factual disputes at this stage of conditional certification. *Kujat v. Roundy's Supermarkets Inc.*, 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019) (Leinenweber, J.) ("concerns regarding a lack of common facts among potential collective members and the need for individualized inquiries should be raised at step two, not step one"); *Cervantes v. CRST Intl., Inc.,* 2021 WL 7185079, at *3 (N.D. Iowa Jan. 25, 2021) ("Arguments about the economic realities of this payment arrangement" and whether plaintiffs were misclassified as independent contractors better suited for second step or for decertification); *Dawkins v. NR 1 Transport, Inc.*, 2021 WL 4125086, at *14 (Sept. 8, 2021) (the "possibility that a fact-intensive inquiry may be necessary later on does not preclude conditional certification at stage one."); *Piazza v. New Albertsons, LP*,

- 14 -

2021 WL 365771 (N.D. Ill. Feb. 3, 2021) ("[a]fter discovery the Defendants will have the opportunity to show that [plaintiffs] who opt in are not in fact similarly situated, and therefore cannot be represented by Piazza in this collective action"); *Brown v. Club Assist rd. Serv. U.S., Inc.*, 2013 WL 5304100, at *13 (N.D. Ill. Sept. 19, 2013) (same).

Defendants contend also that because Plaintiffs only performed delivery for TopHat third-party retailer clients Costco, Wayfair, La-z Boy, and General Electric, the scope of the conditional certification should be limited to delivery drivers who worked for these three clients only. Defendants argue that Plaintiffs cannot establish that other third-party retailers acted similarly to the four retailers for which Plaintiffs drove. However, the litmus test is whether Plaintiffs can demonstrate the decision maker was acting similarly with respect to the putative class. Here, that decision maker is TopHat – not the third-party retailers – as the party with the formal engagement with the drivers.

The cases Defendants cite are not applicable. In *Rodgers v. CVS Pharmacy*, the court denied conditional certification because the plaintiffs failed to show the putative class held same job duties as them. 2006 WL 752831 (M.D. Fla. Mar. 23, 2006). Here, it is uncontested that all putative plaintiffs would be delivery drivers. In *Hinterberger v. Catholic Health Sys.*, the court limited certification to only those facilities where plaintiffs worked because the alleged FLSA violations concerned discrete actions taken during lunch breaks *by those facilities*. 2009 WL 3463134, at *6 (W.D.N.Y. Oct. 21, 2009). Here, Plaintiffs' claims do not rely on any action taken by the third-party carriers, but rather by TopHat.

As such, Plaintiffs' Motion for Conditional Certification is granted.

## 2. *Opt-In Notice*

Defendants raise four objections to Plaintiffs' proposed Notice. First, Defendants oppose the issuance of notice by text message, arguing that notice via first class mail is the preferred

and most reliable method for delivering notice and that text message is intrusive. While not every court permits notice by text message, courts in this district have authorized notice by text message where the plaintiffs engage in transitory work where they are often on the move and may be best reached by text message. *Perizes v. Dieticians at Home, Inc.*, 2021 WL 3849646, at *8 (N.D. Ill. Aug. 27, 2021) (authorizing text message where plaintiffs "spend much of their work weeks travelling between patients' homes"); *Campbell v. Marshall Intl., LLC*, 623 F.Supp. 3d 927, 934-35 (N.D. Ill. 2022). Here, Plaintiffs are delivery drivers and have alleged they are transitory as well. As such, the Court will authorize text message, email, and first-class mail.

Second, Defendants argue that a reminder notice is unnecessary. While courts in this district have approved reminder notices where the notice makes clear the court has not taken a position on the action's merits, this Court does not find a reminder necessary in light of having already approved three forms of transmitting notice, two of which are paperless (U.S. mail, email, and text message). As such, the Court denies Plaintiffs' request to send a reminder notice. *See Perizes*, 2021 WL 3849646, at *8.

Third, Defendants take issue with the substance of the notice, arguing that characterizing the lawsuit as one for "unpaid wages" is inaccurate. They argue instead the notice should reflect the lawsuit as a misclassification lawsuit. Because the case deals both with alleged misclassification and unpaid wages, the Court permits the heading to reflect both issues.

Fourth, Defendants take issue with the language, "This is a court authorized notice." As the Supreme Court observed, "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 166 (1989). Seeing as how this Court does authorize the notice, the language can stand. This is true particularly since other language clarifies

that the Court has not taken a position on the merits, though this qualifying language should be bolded, since the court-authorized language is bolded.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court GRANTS Third-Party Defendants' Motion to Dismiss the Third-Party Complaint, GRANTS Defendants' Motion to Strike Plaintiffs' "in the alternative" Counts IV and V. The Court, having considered Plaintiffs' Motion for Conditional Certification and to Facilitate Notice Pursuant to Section 216(b) of the Fair Labor Standards Act and supporting documents, hereby GRANTS Plaintiffs' Motion and ORDERS as follows:

1.      The Court hereby conditionally certifies the following collective: all delivery drivers who worked for TopHat in the United States between May 2020 and the present, who were classified as independent contractors, and who separated from TopHat ("Collective Members").

2.      Plaintiffs' proposed Notice and Opt-in Form, in a form substantially similar to Exhibits A and B attached to Plaintiffs' Motion, are approved.

3.      Within 14 days of the date of this Order, Defendants shall produce to Plaintiffs, in Excel spreadsheet format, a list of the names, last-known mailing and personal email addresses, last known telephone numbers, last four digits of Collective Members' Social Security numbers (for those notices returned as undeliverable) and work locations and dates of employment for all Collective Members.

4.      Plaintiffs' plan for distribution of notice is approved.  Notice of this case shall issue to collective action members by mail, email, and text message, within 10 days of receipt of the data from Defendants.

5.      Collective action members shall have 90 days from the date notice is mailed to join the case by submitting an opt-in form by mail, email, fax, or electronic signature service.

- 17 -

6.     Consent to Join Forms will be deemed to be filed on the day they are stamped as received by Plaintiffs' counsel. Plaintiffs' counsel shall file in the record all such Consent to Join Forms they receive on a weekly basis.

**IT IS SO ORDERED.**

 

Harry D. Leinenweber, Judge
United States District Court

Dated: 11/27/2023

- 18 -