IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEAROY WILLIAMS, FRANCIS CABRERA, KEVIN SLAUGHTER, RYLAND TIMOTHY, JOVANNI LANDA, DANIEL QUINN, and the estate of JONATHAN MORNING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOPHAT LOGISTICAL SOLUTIONS, LLC and ATLAS LOGISTICS INC.,<br><br>Defendants. | Case No. 1:23-cv-01573<br><br>Judge: Thomas M. Durkin<br><br>Magistrate Judge: Maria Valdez |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF THE SETTLEMENT AGREEMENT AND MEMORANDUM
OF LAW IN SUPPORT THEREOF**

**I.     INTRODUCTION**

Plaintiffs Learoy Williams, Francis Cabrera, Kevin Slaughter, Ryland Timothy, Jovanni Landa, Daniel Quinn, and the estate of Jonathan Morning (together, "Plaintiffs") hereby respectfully request that the Court enter an order granting final approval of this class and collective action settlement. This Settlement provides for a non-reversionary total payment of $1,350,000.00 See Settlement Agreement, Dkt. 132.1, at ¶ 12(l). As set out below, this amount represents approximately 40% of Settlement Class Members' total damages, and provides significant compensation to the Settlement Class members, with the highest settlement award in excess of $40,000.00, and the average award in excess of $4,000.00. Lichten Decl. ¶ 13; Simpluris Decl. at Ex. A.

1

On March 13, 2025, this Court issued an order granting preliminary approval of the settlement. Dkt. 134. On May 6, the Settlement Administrator sent out notice to Settlement Class Members by First Class Mail, e-mail and text message. Simpluris Decl. ¶ 6. Of the mailed notices, 20 initially came back as undeliverable; after re-mailing, only two came back as undeliverable. Id. ¶¶ 7. During the past several weeks, the Settlement Administrator fielded approximately 50 calls and emails from Settlement Class Members. Id. ¶ 9. Importantly, there have been objections to the proposed Settlement and no requests for exclusion. Id. at ¶¶ 10-11. The fact that the Settlement Class overwhelmingly supports the Settlement strongly favors final approval.[1]

The settlement is entitled to a presumption of fairness because it is the result of arm's length negotiations between experienced counsel, assisted by an experienced and independent mediator – Retired Judge Morton Denlow. In addition, Class Counsel have been litigating the consolidated Landa and Williams cases for four years and conducted an in-depth factual investigation analyzing thousands of pages of documents, conducting depositions, and preparing a detailed damages model based on the pay data provided by Defendants for the Settlement Class Members. See Lichten Decl. ¶ 12.

Finally, the Settlement merits final approval because it offers the Settlement Class substantial advantages over continued litigation of this case. Specifically, Settlement Class Members will receive significant financial compensation and they will avoid the risks inherent in the continued prosecution of this case, in which Defendants have asserted various defenses to

---

[1] See Sanchez v. Roka Akor Chicago LLC, 2017 WL 1425837, at *2 (N.D. Ill. Apr. 20, 2017) ("The absence of any objections to the Settlement by Class Members . . . supports approval of the Settlement."); In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D.Ill.2000) aff'd, 267 F.3d 743 (7th Cir.2001) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement").

liability.[2] The average settlement award in this case is in excess of $4,000.00, and the highest payout is estimated to be in excess of $40,000.00. Lichten Decl. ¶ 13. For these reasons, detailed further below, the Court should enter an order granting final certification of the Settlement Class pursuant to Rule 23 and final approval of the Settlement.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

   A. The <u>Landa</u> Matter

On May 12, 2021, Plaintiff Landa filed a class action complaint in the Circuit Court of Cook County, Illinois alleging Defendants misclassified him, and others delivery drivers who worked for TopHat in Illinois, as independent contractors, and took deductions from their pay and forced them to bear business expenses in violation of the IWPCA. <u>See</u> <u>Landa, et al v. TopHAT Logistical Solutions LLC and Atlas Logistics, Inc.</u>, No. 2021CH02328. Plaintiff later amended his Complaint to add Plaintiff Quinn. The Parties engaged in extensive discovery, including written discovery and depositions of Plaintiff Landa and Defendants' witness Tracy Shandle, and exchanged thousands of pages of documents. Ex. 2 at ¶ 12.[3]

   B. The <u>Williams</u> Case

Following the filing of the <u>Landa</u> case, Plaintiffs' Counsel received inquiries from individuals who performed work in states other than Illinois, and so filed the <u>Williams</u> case, which included nationwide FLSA collective claims and individual state law claims. Plaintiffs Learoy Williams and Jonathan Morning filed this lawsuit on March 14, 2023, alleging, in relevant part, that Defendants misclassified them and other delivery drivers as independent contractors when

---

[2] TopHat has maintained that the drivers were independent contractors and not employees, and cannot avail themselves of the minimum wage protections of the FLSA; that any deductions Defendants made from the delivery drivers' pay were properly authorized, under the IWPCA or otherwise; and that Plaintiffs never made a timely request for expense reimbursement or confirmed the deductions were agreeable before they were made, among other defenses.

[3] Plaintiffs Landa and Quinn had filed a motion for class certification of their deductions and expense claims under the IWPCA. Briefing on this Motion was stayed pending the Parties' efforts to explore alternative dispute resolution.

they were, in, fact, employees of Defendants. Dkt. 1. They brought individual claims, asserting that, as a result of Defendants' classification and compensation practices, they were subject to a host of unlawful deductions made by Defendants from their pay, and were forced to bear business expenses that should have properly been borne by Defendants, in violation of Illinois, Nebraska and Iowa law. Id. Plaintiffs also brought collective action claims, alleging that, as a result of Defendants' policies, they and other delivery drivers were not paid minimum wage in their final weeks of work for TopHat, in violation of the FLSA. Id. The minimum wage claims were brought on behalf of a nationwide collective, which was certified by this Court on November 27, 2023. Dkt. 48. Forty-seven individuals filed opt-in consent forms to join the Williams matter; thirteen of these subsequently withdrew their consent forms. [4] After the close of the opt-in period, Plaintiffs amended their complaint to add Plaintiffs Slaughter, Timothy and Cabrera and to add claims, on behalf of these Named Plaintiffs, under Oregon and North Carolina law. See Fourth Amended Complaint, Dkt. 80. The Parties engaged in extensive written discovery, including written discovery issued to a sample of the opt-ins, exchanging thousands of pages of written documents. See Declaration of Harold Lichten (attached hereto as Exhibit 2) at ¶ 12. Defendants also took the deposition of Plaintiff Learoy Williams. Id.

C. **Mediation and Settlement**

The Parties in the Landa matter had, on May 22, 2023, attended a mediation session before nationally known wage and hour mediator and retired Federal Magistrate Judge Morton Denlow. Ex. 2 at ¶ 8. This mediation did not result in a resolution. Id. Thereafter, the Parties continued to litigate both the Landa and Williams cases. On November 25, 2024, the Parties attended a second full-day virtual mediation session for both the Landa and the Williams matters before Judge

---

[4] Dkts. 50-1, 51-1, 53-1, 55-1, 59-1, 63-1, 64-1, 68-1, 72-1, 73-1, 74-1, 75-1, 77-1, 100; 76, 87, 92, 95.

Denlow. Id. Following this session, the Parties reached a settlement in principle for the Gross Settlement Amount of $1,350,000.00, which is now before the Court. Id. On February 13, 2025, in accordance with the Parties' Settlement Agreement, Plaintiffs filed a Fifth Amended Complaint in this case, adding Plaintiffs Jovanni Landa and Daniel Quinn, and adding claims (originally asserted in the Landa case) on behalf of a class of individuals who contracted with TopHAT to provide delivery services and who drove a truck to make deliveries on behalf of TopHAT's third-party clients, and who were classified as independent contractors by TopHAT within the State of Illinois between May 12, 2011, to present. Dkt. 129, which effectively combined the Landa case with the Williams case in order to globally resolve both cases brought against TopHat.

D. **Settlement Approval and Notice to Class Members**

On March 4, 2025, Plaintiffs moved for preliminary approval of the settlement. Dkt. 132. The Court granted Plaintiffs' Motion for Preliminary approval on March 13, 2025. Dkt. 134. On May 6, 2025, the Settlement Administrator mailed, emailed, and sent via text message, notice of the settlement to the approximately 215 Settlement Class Members identified by Defendants. Simpluris Decl. ¶ 6. Of the mailed notices, twenty initially were returned as undeliverable; after re-mailing, only two were returned as undeliverable. Id. ¶ 7. The Settlement Administrator fielded calls and emails from approximately 50 Settlement Class Members during the next several weeks. Id. ¶ 9. As of the time of writing, there have been no objections to the settlement, and no requests for exclusion. Id. ¶¶ 10-11.

III. **ARGUMENT**

    a. **The Landa Settlement Class Meets the Requirements for Rule 23 Certification**

Plaintiffs seek to certify, for settlement purposes only, the following class:

> individuals who contracted with TopHAT to provide delivery services and who drove a truck to make deliveries on behalf of TopHAT's third-party clients, and

5

who were classified as independent contractors by TopHAT within the State of Illinois between May 12, 2011, to present.[5]

To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). Harper v. Sheriff of Cook Co., 581 F.3d 511, 513 (7th Cir.2009); Oshana v. Coca–Cola Co., 472 F.3d 506, 513 (7th Cir.2006). Under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Parties stipulate, solely for the purposes of settlement, that this class meets the requirements for class certification under Fed. R. Civ. P. 23(e); Plaintiffs nevertheless provide a brief analysis of the Rule 23 criteria here.

The settlement class is sufficiently numerous, with more than 100 members. Simpluris Decl. ¶ 6. As set out in preceding sections, common legal issues predominate with respect to the Settlement Class Members' claims against TopHat: Plaintiffs have alleged that they and the members of the class were misclassified as independent contractors under the IWPCA, and that as a result TopHat took unlawful deductions from their pay and unlawfully forced Plaintiffs to shoulder necessary expenditures and losses within the scope of their employment. Plaintiffs' claims are typical of those of the class members – Plaintiffs and all class members seek compensation from TopHat for unlawful deductions. As set forth in greater detail in the supporting declaration of Harold Lichten, Plaintiffs have, over the course of the litigation, diligently represented the interests of other delivery drivers, and Plaintiffs' counsel are highly experienced in this type of litigation. Lichten Decl. ¶¶ 2-7. Finally, resolution of Plaintiffs' and class members'

---

[5] The instant settlement is comprised of a Rule 23 class for the Landa claims as well as the individuals who opted into the Williams case, whose claims arise under the FLSA, and are thus subject to a more lenient approval standard.

claims on a class wide basis is highly preferable to piecemeal litigation, particularly given the relative size of the claims and the class members' limited resources.

> A. **The Settlement Is Fair and Reasonable Under Rule 23(e)**

The fairness of the Settlement is analyzed under the standard applicable to class action settlements under Fed. R. Civ. P. 23(e). A court must evaluate a class action settlement to determine whether it is "'fair, reasonable, and adequate.'" Williams v. Rohm & Haas Pension Plan, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). As a general matter, "The compromise of complex litigation is encouraged by the courts and favored by public policy." "In the class action context in particular, there is an overriding public interest in favor of settlement." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980), overruled on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). This is because class action settlements "reduce[] the strain such litigation imposes upon already scarce judicial resources." Id.

In evaluating the fairness of a settlement under Rule 23(e), courts in this Circuit examine the following factors:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir.1982) (citing Armstrong v. Board of School Directors, 616 F.2d 305, 314 (7th Cir.1980)). Application of these factors to the present case shows that the settlement reached by the Parties meets the requirements of Rule 23(e).

> 1. **The Strength of Plaintiffs' Case on the Merits Compared to the Settlement Terms**

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement."

7

Wong v. Accretive Health, Inc., 773 F.3d 859, 863-64 (7th Cir. 2014) (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). Here, the Settlement presents a substantial recovery for Settlement Class Members. The Gross Settlement Fund of $1,350,000.00 represents approximately 40% of the Settlement Class Members' damages in this case,[6] and is a significant recovery in light of the risks of continued litigation and the various defenses available to Defendants. Lichten Decl. ¶¶ 11, 13. Six of the Settlement Class Members will receive settlement awards in excess of $20,000.00; and the average settlement award will be more than $4,000.00. Id. ¶ X.

Had litigation continued, TopHat would argue that Plaintiffs and class members were properly classified as independent contractors. Lichten Decl. ¶ 11. TopHat would likewise maintain that class treatment of the IWPCA claims asserted by Landa and Quinn is not appropriate. Id. Further, TopHat would argue that the deductions it took from Plaintiffs' and class members' pay do not violate the IWPCA, either because they are for the class members' benefit, or because they are authorized by the class members' contracts. Id. While Plaintiffs do not believe that the deductions taken by TopHat meet the requirements outlined by the Illinois Department of Labor's regulation, there was a substantial risk that the Court would find that some or all of the deductions are not recoverable under the IWPCA. Id. Similarly, TopHat would likely argue that it was not required to reimburse Plaintiffs for expenses and losses they incurred in the scope of their employment with TopHat. Id. Finally, TopHat would argue that some of the opt-ins in this case did not drive personally for TopHat in their final week of work and thus are not entitled to minimum wage compensation under the FLSA. Id.

---

[6] Were these cases to go forward, the court would likely find that some of the deductions claimed by the Landa class members, which represent the majority of the damages in these cases, are not recoverable. Accordingly, the Gross Settlement Amount likely represents an even higher percentage of the damages Settlement Class Members are likely to recover.

Thus, despite litigating the Landa and Williams cases for four years, Plaintiffs' Counsel have determined that, given the risks outlined above, the best interests of the class are served by obtaining substantial compensation now in the form of the settlement before the Court. Id. In sum, the settlement properly accounts for the various legal issues and risks present in Plaintiffs' claims.

### 2. The Complexity, Length and Expense of Further Litigation

The complexity, expense and likely duration of this litigation also support approval of the Settlement. Prior to engaging in mediation, the Parties engaged in extensive written and oral discovery, as well as extensive briefing on motions to dismiss and collective certification, and Plaintiffs had filed a motion for class certification in the Landa case. Were the Landa and Williams cases to proceed, the Parties would need to extensively brief class certification in the Landa case, decertification in the Williams case, brief summary judgment; as well as prepare for trial and subsequent appellate proceedings. Further litigation would be lengthy and expensive, and would present significant risks to both sides. See Isby, 75 F.3d at 1199 (settlement approved where "continuation of the litigation 'would require the resolutions of many difficult and complex issues,' would 'entail considerable additional expense,' and would 'likely involve weeks, perhaps months, of trial time.'"); Am. Int'l Group, Inc. v. ACE INA Holdings, Inc., 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011) ("Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended."). This factor strongly supports final approval of the Settlement.

### 3. The Reaction of the Class to the Settlement

The reaction of the Settlement Class further supports final approval of the Settlement. Class Counsel have received no objections to the settlement, and no requests for exclusion. Simpluris Decl. ¶¶ 10-11. See In re Mexico Money Transfer, 164 F.Supp.2d at 1021 (the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial

evidence in favor of the settlement"). The uniformly positive response to the settlement from the Settlement Class weighs in favor of final approval.

### 4. The Opinion of Competent Counsel

In evaluating the fairness of a class action settlement, courts are "entitled to rely heavily on the opinion of competent counsel …." Gautreaux, 690 F.2d at 634 (quoting Armstrong, 616 F.2d at 325). The opinions of counsel are entitled to particular weight when the proposed settlement is the product of arm's-length negotiations with an experienced mediator. See Wong, 773 F.3d at 864. In this case, Plaintiffs' Counsel have carefully weighed the risks attendant to proceeding with litigation. Lichten Decl. ¶ 12. They have pored over thousands of pages of documents produced by Defendants; have deposed Defendant's representative; have prepared a detailed damages analysis, and have participated in a full day mediation session, as well as extensive follow-up negotiations, with retired Judge Morton Denlow prior to reaching Settlement. Id. ¶¶ 8, 12.

### 5. The Stage of the Proceedings and the Amount of the Discovery Completed

This final consideration is "important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong, 616 F.2d at 325. In the instant case, prior to engaging in mediation, Plaintiffs' Counsel have reviewed extensive written discovery –including detailed pay records for Settlement Class Members – have conducted depositions of Defendants' representative, have produced discovery for Plaintiffs, and have attended the depositions of Plaintiffs Landa and Williams. In sum, Plaintiffs' Counsel were fully aware of the risks and benefits of this case prior to reaching the Settlement.

### B. The Proposed Service Awards to Plaintiffs are Reasonable

"Because a named plaintiff is an essential ingredient of any class action, an incentive

award is appropriate if it is necessary to induce an individual to participate in the suit." Leung v. XPO Logistics, Inc., 326 F.R.D. 185, 204 (N.D. Ill. 2018) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Thus, "[i]ncentive payments sufficient to induce Named Plaintiffs to participate in the lawsuit are appropriate in the Seventh Circuit . . . ." In re Capital One Tel. Consumer Protec. Act Litig., 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015). The size of a service award is determined by examining "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook, 142 F.3d at 1016 (citing Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1267 (N.D. Ill.1993)).

Service awards are particularly important in wage and hour cases, where plaintiffs face risk of retaliation from potential employers. Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed Plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Here, Plaintiffs' Counsel request service awards in the amount of $10,000,00 each for plaintiffs Williams, Morning, and Landa, in recognition of their instrumental roles in initiating the Landa and Williams cases, and their years-long involvement in the litigation. Lichten Decl. ¶ 16. Class Counsel also seek service awards in the amount of $5,000.00 each for Plaintiffs Cabrera, Slaughter, Timothy and Quinn, who have each stepped forward as named Plaintiffs and who have participated in extensive written discovery and provided documents in support of their claims in

11

the Landa and Williams cases. Id. The awards requested appropriately compensate Plaintiffs for their role in initiating their case and their ongoing involvement, over the past several years, in bringing this case to settlement, including by helping Class Counsel develop the theory of the case and draft the Complaint, providing documents, responding to discovery, and submitting to lengthy depositions. Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements.[7] A 2006 study found that while the average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher.[8] As one court observed, "[incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Given Plaintiffs' significant contributions to this matter, the fact that they are the only two class representatives and faced potential retaliation from current and/or future employers in the trucking industry, the proposed service awards are fair and

---

[7] See Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (holding "named plaintiff is an essential ingredient of any class action," affirming incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); Douglas v. W. Union Co., 328 F.R.D. 204, 218-19 (N.D. Ill. 2018) (granting incentive award to named plaintiff); In re Compact Disc Min. Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

[8] Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). The court in Scovil found that recent awards in employment cases reached $30,000 and higher. Id. (citing Cook, 142 F.3d at 1016 (approving $25,000 incentive award for one named plaintiff)); see also Brandon v. 3PD, Inc., No. 13-CV-03745, slip op (N.D. Ill. Jan. 26, 2016) (approving service awards of $20,000 to two plaintiffs, and $10,000 to one plaintiff); In re Broiler Chicken Antitrust Litig., 2021 WL 5578878, at *4-5 (N.D. Ill. Nov. 30, 2021) (granting $15,000 incentive award to named plaintiffs); Briggs v. PNC Fin. Servs. Grp., Inc., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (awarding $12,500 to named plaintiffs); Zolkos v. Scriptfleet, Inc., 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff).

reasonable. For these reasons, the Court should approve the proposed service awards to each of the Named Plaintiffs for their service to the Settlement Class.

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Final Approval of the Settlement Agreement.

Dated: July 2, 2025  Respectfully Submitted,

/s/ Olena Savytska
Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

    I, Olena Savytska, hereby certify that on this 2nd day of July, 2025, I filed the foregoing document with this Court using the CM/ECF. This system sends notifications of such filing and service to all counsel of record.

                                                /s/Olena Savytska
                                                Olena Savytska